UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ARTHUR GREER,

    Plaintiff,                           CASE NO. 05-CV-10101-BC

v.                                     DISTRICT JUDGE DAVID M. LAWSON
                                           MAGISTRATE JUDGE CHARLES BINDER
AUDBERTO C. ANTIONINI, M.D.,[1]

    Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANT ANTONINI'S MOTION TO DISMISS**
(Dkt. 13)

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's Motion to Dismiss, which is being treated as a motion for summary judgment, be **GRANTED**.[2]

## II.    REPORT

### A.    Introduction

By order of U.S. District Judge David M. Lawson, this case was referred to the undersigned Magistrate Judge for general case management on May 4, 2005. (Dkt. 7.) Pending is the above-entitled motion. After being granted an extension of time (Dkt. 25), Plaintiff filed a response

---

[1] It is noted that Defendant's last name is spelled differently by each party in this case. I will spell it "Antonini" in this Report and Recommendation.

[2] In the event that this recommendation is adopted, the following motion should be considered moot: Motion to Facilitate Access to the Courts. (Dkt. 7.)

opposing the motion (Dkt. 26), and Defendant filed a reply (Dkt. 27). Subsequently, Plaintiff filed a set of supplemental exhibits, including prison medical records and evidence of his educational attainments. (Dkt. 31.) Upon review, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), this motion is ready for Report and Recommendation without oral argument.

Plaintiff is an inmate in the custody of the Michigan Department of Corrections ("MDOC") and is currently housed at the Macomb Correctional Facility. The incidents giving rise to Plaintiff's complaint took place while he was incarcerated at the Charles E. Egeler Correctional Facility in Jackson, Michigan. The sole defendant is Dr. Audberto Antonini, M.D.[3] In Plaintiff's *pro se* typewritten complaint, filed April 8, 2005, he alleges that he suffers from high blood pressure which requires close monitoring. (Compl., Dkt. 1 at ¶ 9.) Plaintiff alleges that in June 2001, he was assigned to GED classes, a fact which upset him because he had informed those who assigned him that he had already finished high school. Plaintiff alleges that this action caused him stress and anxiety and brought about a transient ischemic attack in July 2001. Plaintiff alleges that he suffered a second such attack in August 2001. Plaintiff alleges that Dr. Antonini was aware of Plaintiff's high blood pressure and failed to take action or remove him from the class requirement. (*Id*. at ¶¶ 23 & 24.) Plaintiff alleges that Dr. Antonini increased his dosage of blood pressure

---

[3]This is not the first time Plaintiff has filed suit against this Defendant. In Civil Action No. 03-CV-72455, Plaintiff sued Dr. Antonini and a number of other defendants. The allegations contained in that complaint against Dr. Antonini are in many ways similar to those in the instant case. United States District Judge Robert Cleland adopted the recommendation of Magistrate Judge Thomas Carlson and dismissed the case, concluding that Plaintiff had failed to exhaust his remedies as required by the Prison Litigation Reform Act ("PLRA"). In Civil Action No. 04-CV-72054, Plaintiff again sued Dr. Antonini, along with other defendants. The allegations against Dr. Antonini in that case are in many ways word for word identical to those appearing in the instant complaint. In that case, Judge Cleland again dismissed the case for failure to exhaust, adopting a recommendation made by Magistrate Judge Steven Pepe. In this case, however, because neither party contests the issue of Plaintiff's exhaustion of prison administrative remedies, and after review of the grievance materials attached to the Complaint, I will presume for the purposes of this Report and Recommendation that Plaintiff has exhausted his administrative remedies pursuant to the requirements of the PLRA.

medication, known as Lopressor, even though doctors at Foote Memorial Hospital recommended lowering the dosage.  (*Id*. at ¶¶ 30 & 31.)

Plaintiff's claim is probably best summarized in a section of Plaintiff's complaint entitled "Cause of Action":

> A.  Plaintiff asserts that Defendant Antionini deliberately failed to examine plaintiff's entire medical history.  Also Defendant Antionini failed to factor the component of stress, renal failure, previous CVA and recent TIA's into a treatment plan.  As a result of the aforementioned factors, Plaintiff in essence was left without any treatment at all.  Which cause plaintiff to incur and suffer a second Cerebral Vascular accident January 3, 2003.  A accident Defendant Antionini could [have] avoided by removing plaintiff from the stressful school assignment on his signature.
>
> B.  Defendant Antionini is charged in this action not once but, twice, for repeated deliberate indifference to plaintiff's serious medical needs related to the stressful school assignment, in 2001 and again during the Fall of 2002.  Plaintiff asserts defendant Antionini is liable under the Eighth & Fourteenth Amendment for his deliberate indifference and discrimination. Being that Antionini knew stress, left untreated would activate eruption of a cerebral vascular Accident.  Plaintiff asserts, Antonini failure to take pre-cautionary measures to abate the prerequisites for plaintiff's cerebral vascular Accident, requires jury deliberation.

(*Id*. at ¶¶ A & B.)  Plaintiff seeks 8.5 million dollars compensatory damages as well as punitive damages.

### B. Arguments of the Parties

Defendant argues that dismissal is appropriate, asserting that Plaintiff's complaint fails to allege either a federal constitutional violation or a violation of any of the other statutes cited by Plaintiff as the basis for jurisdiction.  Defendant argues that Plaintiff is in actuality conflating his medical needs with his dispute over class attendance, contending that Plaintiff's dispute is in actuality with the authorities who ordered him to take the classes.  Citing cases from this circuit, Defendant contends that federal courts have historically been reluctant to intervene in matters

3

relating to a physician's exercise of professional medical judgment, which Defendant argues is at the crux of Plaintiff's complaint.

Plaintiff vigorously maintains that Dr. Antonini violated his federally protected constitutional rights. In support, Plaintiff attaches a series of exhibits to his response[4] (Dkt. 26), along with additional documentary evidence proffered in the form of supplemental exhibits.[5] (Dkt. 31.) Exhibits attached to Plaintiff's response indicate that on May 19, 2001, Plaintiff was examined by Dr. Antonini. (Pl.'s Resp., Dkt. 26.) Blood pressure was measured at 168/98, and a substantial part of the physical examination was unremarkable. (*Id.*, Ex. 12.) The notes indicate that the doctor took a fairly detailed medical history from Plaintiff. (*Id.*) The doctor noted that Plaintiff had a long-standing history of hypertension and renal insufficiency. The doctor re-evaluated Plaintiff's medications and reassured him. (*Id.*) Three weeks later, Plaintiff was seen again. (*Id.*, Ex. 13.) At that time, Plaintiff apparently had no new complaints, and the doctor's notes indicate that Plaintiff was "better than ever." (*Id.*) Plaintiff's blood pressure was measured at that time at 110/70, and his blood pressure and renal function appeared to be under control. The doctor stated that Plaintiff was having "good medical compliance." (*Id.*)

In early July 2001, Plaintiff reported feeling dizzy and under stress. (*Id.*, Ex. 14.) A registered nurse measured Plaintiff's blood pressure at 189/101 and noted that Plaintiff walked with a steady gait. The registered nurse's notes indicate that she notified Dr. Antonini who stated that Plaintiff should go to bed, and arrangements should be made to see a physician the next day. (*Id.*) Plaintiff was seen the next day and stated that he was under considerable anxiety as he had been

---

[4]Handwritten numbers appear on these exhibits, presumably added by the Plaintiff. These numbers are not in consecutive order.

[5]These exhibits are unnumbered.

"told he has to go to school when he has already graduated, high school." (*Id.*) Blood pressure was measured at 194/107. Plaintiff stated that he wanted "off all bp [blood pressure] meds from Medline." (*Id.*)

In mid-September 2001, Plaintiff was again seen by Dr. Antonini. (*Id.*, Ex. 15.) He stated that he had "too much stress at this institution because of high school completion" requirements. (*Id.*) The doctor noted that Plaintiff was anxious, although ambulatory and fully oriented and in no acute distress. Blood pressure was measured at 214/112. Plaintiff and Dr. Antonini apparently discussed the issue relating to the schooling requirement, and the doctor stated that Plaintiff "expects me to resolve his situation. I called JCF school principal who referred to me that there is no concrete evidence to support that he has completed high school in spite of the fact that he 'says' it." (*Id.*) The principal apparently suggested to the doctor that Plaintiff take the GED test.

In early October 2001, Plaintiff was seen by another physician relating to a grievance. (*Id.*, Ex. 29.) According to the doctor, Plaintiff wanted medical exemption from school, as he was "a 'college graduate' and should not be forced to go to school in the first place." (*Id.*) This doctor advised Plaintiff that "currently there are no medical reasons for exception from school. If there are logistic problems pertaining to his qualifications which automatically exempt him from attending classes, they need to be addressed with the appropriate authorities and health care is not involved in that process." (*Id.*) This doctor also discussed the effects of high blood pressure.

In early January 2002, Plaintiff complained of weakness in his left arm and not feeling well. (*Id.*, Ex. 17.) Plaintiff was first seen by a physician's assistant and then a doctor. The doctor reported that Plaintiff had weakness in the left arm, slurred speech, and difficulty walking and dressing. Blood pressure was measured at 186/119. Marginal notes list a series of medications prescribed to the Plaintiff. The doctor found that the muscles on the left side of Plaintiff's face and

5

forehead appeared to be drooping. Plaintiff exhibited weakness in both the left arm and leg. (*Id.*) The doctor diagnosed an acute cardiovascular accident [CVA] and uncontrolled hypertension. Plaintiff was sent to an emergency room via ambulance with another physician accompanying him. (*Id.*)

Other exhibits attached to Plaintiff's response indicate that in April and in October 2002, Plaintiff received physician's orders exempting him from school. (*Id.*, Ex. 31.) Neither of these documents appear to have been signed by Dr. Antonini. Also included among Plaintiff's exhibits is an affidavit from another prisoner stating that "during the summer months of 2002" that prisoner overheard what sounded like an argument between Plaintiff and Dr. Antonini. (*Id.*, Ex. 70.) According to the affidavit, the doctor stated: "I am not doing anything for you," to which Plaintiff replied: "you don't have to talk to me like a child." (*Id.*)

### C. Analysis and Conclusions

### 1. Governing Law and Motion Standards

#### a. Plaintiff's *Pro Se* Status

I note at the threshold that Plaintiff brings this action *pro se.* A *pro se* litigant's pleadings are construed liberally and judged against a less stringent standard than pleadings drawn by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). However, it "is not the proper function of the district court to assume the role of advocate for the *pro se* litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). In other words, the court is not to "construct arguments or theories for the plaintiff in the absence of any discussion of those issues." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (citation omitted). ". . . [A] *pro se* litigant, whether a plaintiff or defendant, is required to follow the law." *Williams v. Sears, Roebuck and Co.*, 143 F. Supp. 2d 941, 947 (W.D. Tenn. 2001). As the U.S. Supreme

Court stated in *McNeil v. United States*, 508 U.S. 106, 113, 113 S. Ct. 1980, 124 L. Ed. 2d 21 (1993), "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *Id.* at 113.

    **b.**    **Defendant's Motion to Dismiss**

Motions to dismiss, such as that filed by Defendant in this case, are governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). Accordingly, when deciding a dismissal motion, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996) (citing *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir. 1993)). "In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357.

Rule 12(b) of the Federal Rules of Civil Procedure provides that when "matters outside the pleading are presented to *and not excluded by the court*, the motion [to dismiss] shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given

reasonable opportunity to present all material made pertinent to such a motion by Rule 56." FED. R. CIV. P. 12(b) (emphasis added). In their treatise, Wright and Miller explain that, pursuant to the portion of the rule italicized above,

> [t]he court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion. This discretion generally will be exercised on the basis of a determination of whether or not the proffered material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate the disposition of the action.

5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366 (footnote omitted).

Plaintiff has filed with his response papers a series of exhibits comprising prison medical records, as well as evidence of his educational attainments. (Dkts. 26 & 31.) These documents appear to have relevance to Plaintiff's arguments and I conclude are worthy of review and consideration. I therefore conclude that matters outside the pleadings presented by the Plaintiff should be accepted and the motion converted to one under Rule 56, as the acceptance and review of these documents will materially facilitate the disposition of the instant motion. Moreover, it is clear that Plaintiff relies upon these documents, thus presuming that the Court will accept and review them. I cannot discern that any party will be prejudiced. I will therefore consider Defendant's motion under the standards for the determination of a Rule 56 motion for summary judgment.

A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the

absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52).

9

Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### c.     Plaintiff's Eighth Amendment Claim

The gravamen of Plaintiff's complaint is the allegation that the Defendant violated Plaintiff's Eighth Amendment rights. The Eighth Amendment to the U.S. Constitution protects convicted inmates from the imposition of "cruel and unusual punishments." U.S. CONST. amend. VIII. In the context of prison medical treatment, the Supreme Court held in *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), that the deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain in violation of the Cruel and Unusual Punishments Clause of the Eighth Amendment to the Constitution. The Court explained that "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* at 106.

A violation of the Eighth Amendment can occur if it "is manifested by prison doctors and their response to prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." The inquiry is two-pronged, consisting of both an objective and a subjective element. *Wilson v. Seiter*, 111 S. Ct. 2321, 2323, 115 L. Ed. 2d 271, 279 (1991). The objective inquiry asks whether the deprivation was sufficiently serious. *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). The *Caldwell* court found that the plaintiff-prisoner "did not suffer a serious deprivation because his injuries were not serious enough to require immediate medical attention." *Id.* The subjective component asks whether the officials acted with a sufficiently culpable state of mind. *Id.* The plaintiff must

show that the defendants' conduct demonstrated a level of deliberateness "'tantamount to an intent to punish.'" *See Hicks v. Frey*, 992 F.2d 1450, 1455 (6th Cir. 1993) (quoting *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir.1988)). In 1994, the Supreme Court further explained this element "by equating it with criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm." *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995) (citing *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 1979, 128 L. Ed. 2d 811 (1994)). In *Farmer,* the Court specified that for a government official to be deliberately indifferent, he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

### 2. Discussion and Conclusions

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. In *Estelle,* 429 U.S. at 105, the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. **Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.** In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (emphasis added) (quotations omitted).

Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are insufficient to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55. The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th

Cir.1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Jones v. Martin*, 5 Fed. Appx. 434, *cert. denied*, 534 U.S. 833, 122 S. Ct. 81, 151 L. Ed. 2d 45 (2001).

I suggest that this case is similar to *Westlake* in that Plaintiff received medical treatment and that his complaint is actually with regard to the expert medical judgment exercised by Dr. Antonini. Rather than a constitutional violation, I suggest that Plaintiff's complaint, particularly the "Cause of Action" section quoted above, states an almost classic negligence based claim of medical malpractice. However, as noted above, the Supreme Court clearly teaches that such claims are not Eighth Amendment constitutional violations. As a result, I suggest the Plaintiff has failed to bring forward evidence showing the objective element of an Eighth Amendment claim.[6] Nor has Plaintiff shown any meaningful evidence of the subjective element required by the Supreme Court. Plaintiff's differences of opinion with the Defendant physician are insufficient. The purported argument related in the other prisoner's affidavit is, I suggest, similarly insufficient to show the requisite state of mind required by the Supreme Court case law. Therefore, I suggest that Plaintiff's complaint does not rise to the level of an Eighth Amendment violation, as he has failed to show either the objective or subjective elements required in order avoid summary judgment on his claims. Plaintiff also cites the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, as a basis for this Court's jurisdiction. I suggest that this assertion is unavailing for at least two reasons. First, Plaintiff has made absolutely no showing that he has complied with the requirement of the PLRA that "no action shall be brought with respect to a prison condition under

---

[6] I further suggest that Plaintiff's claim would fail on the merits, as the records he proffers as exhibits show that he repeatedly received prompt medical attention, either by Dr Antonini or other medical professionals.

12

1983, **or any other federal law**, by a prisoner confined in any jail . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a)(emphasis added). *Chamberlain v. Overton*, 326 F. Supp. 2d 811 (E.D. Mich. 2004). Although Plaintiff filed a series of prison grievances arising out of the incidents described in his complaint, none of them make mention of the ADA, nor do they raise issues from which an ADA claim can be inferred. Moreover, even if he had made such a claim, I suggest that Plaintiff has failed to meet any of the substantive elements necessary in order to find a violation of this Act. *Smith v. Franklin Co.*, 227 F. Supp. 2d 667, 676-77 (E.D. Ky. 2002).

I therefore suggest that the grant of Defendant's motion, converted to a Rule 56 motion for summary judgment, is appropriate.

### III. <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*,

829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                                  s/ *Charles E Binder*
                                               CHARLES E. BINDER
Dated: January 5, 2006                  United States Magistrate Judge

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Kimberley A. Koester, and served in the traditional manner on Arthur Greer and Honorable David M. Lawson.

Dated:  January 5, 2006                     By    s/Mary E. Dobbick
                                                            Secretary to Magistrate Judge Binder